Okay, Mr. Burnett. May it please the Court, Jason Burnett for the Appellant and Cross Appellee, R.J. Reynolds. I've asked to reserve three minutes of my time for rebuttal. The District Court acknowledged that its decision to exclude the evidence of infidelity, the divorce, the remarriage to another woman was, in its words, a close question. This Court in ACOC held that the 403 balance should be struck in favor of admissibility. The District Court in this case erred in striking that balance in favor of exclusion. The District Court also erred in treating the comment that Reynolds' counsel was engaged in hypocrisy in the courtroom as a substantive response to the defense on the merits. And on the Cross Appeal issue, the gasoline products ruled creates a presumption that all live issues will be retried. And that's required here because the issues related to punitive entitlement are intimately intertwined with the issues of comparative fault, class membership, and compensatory damages. Now, on the marital discord issue, there are three reasons why the District Court abused its discretion. First, it never explained why this evidence would be prejudicial to Mrs. Sowers, the only plaintiff in the case. Mrs. Sowers did nothing wrong under this evidence. In fact, the natural tendency of the evidence was to create sympathy for Mrs. Sowers. And I'm not suggesting that the jury should have urged its admission. Well, I'm not suggesting... You obviously weren't harmed by the exclusion of it because it would only have helped Mrs. Sowers. Well, it would have helped Reynolds on the question of compensatory damages. Then the admission of it wouldn't have, on net balance, have helped Mrs. Sowers. Whenever I hear that argument, why'd you argue against it then? Well, the jury's not going to award damages for sympathy. They're instructed not to. I'm only making the point that the natural tendency of the evidence is to provoke that kind of sympathetic reaction. And naturally, you should not have taken the position you did. You should have welcomed the exclusion of that evidence. Well, evidence can do two different things in a trial, right? I know it. And then the question is the net balance. I view it as hypocritical for somebody to say, don't let that in or do keep that out and then say, oh, but, you know, it would have helped us had it come in or it would have helped the other side had it come in. You took the position that you didn't want that evidence excluded. So you can't consistently take the position that, on balance, it would have helped her. I'm not taking that position, Your Honor. It wouldn't have helped us at trial because the jury could not award damages for sympathy. I'm pointing out that's its natural tendency. The evidence helps Reynolds. Well, what evidence is that if the jury would have been instructed to, and we presume they followed instructions not followed, not have acted on the sympathy? Because the court, the district court, should give some explanation why this evidence does have a prejudicial effect, which it never gave, because it's not apparent that it has that kind of effect. It's not apparent that evidence of marital discord that happened prior, back in 1969 to 1972, the couple reconciled and, from all appearances, had a happy marriage until his death in 1995, that's not obvious? It's not obvious what the prejudice to Mrs. Sowers would be. It's not obvious what the prejudice to her of marital discord that happened from 1969 to 1972 would have when there's been reconciliation? Yes, Your Honor, because the evidence was that Mr. Sowers had a drinking problem and engaged in infidelity. And that came in. And the drinking, the alcohol issue came in. Yes, Your Honor. So you have, you're fighting over marital discord that happened between 1969 and 1972 and there was subsequent reconciliation. Yes, Your Honor, and I take that question to be going to the probative value of the evidence. It has a diminished probative value because it was in the past. That's just a question of Florida law. And Florida law makes clear that it's the entire course of the marriage that's probative to the extent of emotional pain and suffering, loss of marital companionship. We know this because the intermediate Florida courts that have reviewed damages awards, in these cases, for surviving spouses, non-economic damages, in Engle progeny cases, have considered the entire course of the marriage. But in a 403 ruling, we don't look to Florida law. Absolutely, Your Honor. I'm talking about whether the evidence is relevant to an issue and state law does provide that this evidence is relevant to the issue. The balancing test is a federal question, but it's relevant to an issue of Florida. My question is going to the balancing, to the 403, that what you seem to be arguing for is a per se rule that marital discord, at any point in time during a marriage, however brief, however long ago, should come in. If 1969 to 1972 can come in. We're not arguing for a categorical rule because if there was some articulable reason why this would be prejudicial to Mrs. Sowers, the actual plaintiff, then yes, a court could exclude it under a 403 balancing. But at a minimum, to exercise that discretion to do the balancing, the district court has to identify the prejudice and has to identify the probative value. That threshold step never occurred here. No explanation why this evidence was prejudicial to Mrs. Sowers. And in this court's decision in AACOP- I can give you an explanation. R.J. Reynolds want that in there to say the bum deserved it. You know? He died. Okay, don't value his life as much because he, largely due to alcohol, was unfaithful to her. And it led to the, you know, he had some woman that he was having an affair with and they had a divorce and you ought to keep that in mind when you're talking about and thinking about damages and all that. This is not a deacon of the church, or at least wasn't at that time. That's why it's prejudicial to her. The jury was specifically instructed on the damages question to consider the harms and losses to Mrs. Sowers only. It said that compensatory damages- I understand that. And we hope that juries follow instructions and we presume they do, but you hope, you, R.J. Reynolds, hope they'll keep that in mind when they're reaching a dollar figure. No, we hope that the jury will consider the entire course, the true facts of the marriage, including his cheating on his wife 23 years before he died. Well, in the case where the plaintiff comes into court and says they've had a good marriage for 51 years, it was love at first sight. When this jury has the misimpression that it was a single, long, continuous, good marriage- Right, so in the record they said they had a good marriage for 51 years? An opening statement, plaintiff's counsel said they were married for 51 years. They didn't say they had a good marriage for 51 years. Not at that time. Mrs. Sowers takes the stand in her direct testimony and says that it was a good marriage. She's testified about what she saw her husband do every day. He was a chain smoker every day. The total impression from this testimony- And your theory is that for three years when he wasn't living with her, he quit smoking, right? No. We don't know what happened during that three years. So there's no, there's no harm to you of excluding relevant evidence of the addiction? Well, it's plaintiff's burden to prove the elements of class membership here. In those three years, the most significant three-year history in the period of smoking because that's after the warnings came out on the pack. That's Dr. Proctor's testimony, their expert. That three years is the most critical. And you know, that's one piece of the pie. The other pieces are the compensatory damages. It's relevant under Florida law. In this court's decision in Aycock, it reversed under 403 because the court, the district court in that case- Which was close to the death. Well, the marital discord evidence was that the wife left the home and took her minor children with her. That was not close to the death. The death occurred in 95 when the smoker was a grandfather. The evidence that was wrongfully excluded in Aycock was evidence that the wife left the home, took her minor children with her. That was just as long ago as the evidence of the divorce and infidelity in this case. Oh, Adkins is the one that was closer to the point of death, was it not? I'm not- Adkins is the case on the cross-appeal issue, Your Honor. Adkins versus Dixie, which I would like to turn to because there's a lot of interesting issues- Adkins. We cannot allow the wrongful death claimant to paint a rosy picture of the marital relationship while the defendant's hands are bound, preventing rebuttal. Yes, Adkins. Yes, Your Honor. That was close in proximity to the death of the person in Adkins. That is true. I'm pointing out merely that in Aycock and cases like Townsend, Alexander, and Cohen, which are state cases, courts do look to events that happened in the past to determine the amount of- You need to move on to the next issue. Yes, I do. So let me talk about the cross-appeal issue. Three key points on this issue. First, gasoline products creates a presumptive rule. It's like a clear statement rule for statutory interpretation. Federal statutes are not presumed to create private rights of action. You need a clear statement for that to happen. The gasoline product standard is the same. It must clearly appear that the issues are so distinct and separable that they can be tried alone. That means the default rule, the presumption is that all live issues will be tried together. Now that presumption gathers force when we're talking about punitive damages. Why? Because punitive damages must be based on the conduct underlying the liability claims. So there's not some distinction between those two. It's the conduct that gives rise to liability that must also give rise to punitive damages Under the Supreme Court's cases, there must be a nexus between the two. And then the third point, the key point, I'll make this very concrete for you. In closing argument, plaintiff's counsel argued five reasons why the jury should apportion more of the fault to Reynolds. And those five reasons were that we sold defective cigarettes that caused millions of people to get diseased. We sell to minors. We conceal the risks of smoking. We marketed filtered and low-tar cigarettes as being safer. And we manipulate the level of nicotine to sustain addiction. Those were the same five reasons asserted by plaintiff's counsel in arguing why the jury should find punitive entitlement against Reynolds. And what's important is not only that those issues overlapped between the two, but there were more than one theory, and the jury only awarded 50% of the fault. It's likely that the jury rejected some of those grounds for comparative fault. In fact, I'll give you one good example, the youth marketing allegation. There's no direct evidence in this case that Mr. Sowers started smoking as a youth. Mrs. Sowers met him after he got out of the Navy. He was 19 years old. Mr. Sowers' brother, William, he testified at trial through his written deposition, and he didn't know when his brother started smoking. So there was only an inference that because he was a heavy smoker at the age of 19, he must have started smoking earlier. But the jury could have rejected that. So if you split these issues, what you could very well have is on a second retrial about punitive damages, plaintiff's counsel standing up and asking for punitive damages because Reynolds marketed to youth on conduct that the first jury may have determined wasn't a cause of this smoker's injury. And that's the injustice and the unfairness of splitting these issues, and my comparative fault must be retried with punitive entitlement on remand. So you're conceding plaintiff's point that we have to, that we should be retroactively applying SOFR like the Florida Supreme Court did? Yes, Your Honor. They, they, they preserved the issue. And so they preserved the issue by a pretrial ruling. SOFR, the Florida Supreme Court decision, came down after the trial. It was then too late for them to move for a new trial. It was after the 30-day period for that. And so, yes, they're entitled to a new trial. The question is the scope of that trial. And this question should be decided in favor of the presumptive rule of gasoline products, which requires all live issues to be tried together. Comparative fault is tied to class membership under state law because both have to deal with whether the smoker smoked because he was addicted or for some other reasons. But then also under state law, comparative fault is tied to compensatory damages under the four-line case that we've decided because of misapprehension about comparative fault could lead to a different result on damages. Of course, the damages is, is lowered in if we reject your other arguments and, and there's no further review, if. So if it went back for another trial, well, of course, it's a little bit artificial because he said we don't want another trial. That's correct. That notes my issue, my question about that issue then. All right. We will now hear from Mr. Coffman. Good morning and may it please the court. There are three issues in this appeal and I'll go through them in the order they're presented in the briefs unless the court prefer I start somewhere in particular. I'd rather you start at the back. The third issue, the punitive damages question, absolutely. There's no question that if this case were pending in state court, Mrs. Sowers would be entitled to a limited retrial on punitive damages only. So the question then becomes, does something in the Seventh Amendment categorically bar what is routine in state court? It does not. This argument's been a recurring theme in Engle progeny litigation. It first appeared in Engle itself where the tobacco defendants contended that you couldn't break the case between the conduct elements decided in the Engle findings and the individual specific issues in the progeny trials, that argument was rejected. It then came up in Searcy where they contended that you can't decide punitive damages separate from those Engle phase one conduct findings, that argument was rejected. And then it came up in Sofer where they made the same argument they make here, which is that you can't break the linkage between comparative fault compensatory damages and punitive damages, that argument was rejected. In all three cases, the argument arose under a combination of federal Seventh Amendment, federal due process. In the state case of state Seventh Amendment, which follows a similar standard, it's been unsuccessful at every turn. You would hope we're at the last gasp of this argument, and in fact, in two other pending tobacco appeals, they don't even advance this argument. They can see that the plaintiffs are entitled to the Sofer remedy. You know, our brief, we have a raft of authority that says the Seventh Amendment prevents only the same essential issue and doesn't prevent courts from bifurcating trials, from carving at the joints, a really routine trial practice in the modern system. There's cases, including cases from this circuit, that say you can even cleave compensatory damages from other elements of liability. Compensatory damages, of course, are core Seventh Amendment fact finding. So as applied here, their argument's even less availing because the Supreme Court in Cooper held that the determination of punitive damages is not really a fact tried by the jury under the Seventh Amendment, but instead a legal determination subject to de novo review in the appellate courts. That holding is the whole basis of the edifice of appellate review. I'm sorry. I thought punitive damages in Florida goes to the jury. The question of whether you have a right to try punitive damage to a jury is distinct from whether punitive damages is a fact subject to reexamination under the Seventh Amendment, and in Cooper, the court held that it was not. It was a legal determination. That's the whole basis of why federal courts can exercise the constitutional review that they do over punitive damages awards. If you look at Cooper, it says that the key facts underlying a punitive damages award that are reviewed for clear error are the facts found by the district court, not the jury, the district court. So the issue is never treated the way you treat core Seventh Amendment issues, such as comparative fault compensatory damages. You know, in response to that, that series of cases from all the federal circuits. But the key facts that go to the amount of punitive damages are determined by the jury. Subject to overriding by the district court. As everything is. Well, not necessarily. The district court connection. But in an acquittal in a criminal case, everything is subject to overriding by the court. Subject to extremely deferential standards of review. The district court and punitive damages can determine reprehensibility de novo. And just like the Court of Appeals can do and the Supreme Court can do. But against all of those cases showing that it's permissible to have two juries decide distinct issues, even if those issues have overlapping evidence. You know, they cite a couple of unpublished Title VII cases that I think by their language is limited to that context. They don't have overwhelming reasoning. And then a couple of inapposite cases dealing with the failure of proof on punitive damages or idiosyncratic state law. There's just nothing against the great weight of authority here. You know, the best case they have is Searcy, which of course rejected their Seventh Amendment argument based on the jury instructions in that case. Of course, there can be no erroneous jury instructions or erroneous evidence here because we haven't yet had the trial. So I think any argument on that front would be premature at best. If the court has no further questions on that issue, turning to the adultery and divorce question. Rule 403 determinations are reviewed by this court using an extraordinarily deferential standard of review, clear abuse of discretion, which requires a legal error, a clearly erroneous finding of fact, or a clear error of judgment. And I think there's a reason why the court treats those questions that way, and that's because the trial court is in the best position to make these rulings with a view towards all the facts of the case and all the proceedings of the case, how the courts manage the case. And I think this case illustrates that principle in two ways. First, as to their damages argument. You have to look at the record on which the district court made its decision. In Mrs. Sowers' deposition, counsel for R.J. Reynolds badgered her with intrusive, embarrassing, and irrelevant questions about these personal scandals from the late 1960s, including whether she knew the names of the women that Mr. Sowers cheated on her with, whether she knew how he met his other wife, whether she was friends with that woman, how her children reacted to the remarriage. They even read to her from the deceased woman's obituary. So on that record, it was clear to the district court that this evidence was not offered for proper evidentiary purposes at all, and the potential for prejudice was quite high indeed. Second, on their addiction and causation themes, which did not emerge in counsel's opening argument, I think that illustrates how abusive discretion review protects the trial court's ability to engage in basic trial management and precludes the appellate court from micromanaging the district judge. When this issue was definitively ruled on on the motion in limine, which set the ground rules for the whole trial for both sides, there was not a word from R.J. Reynolds about addiction or about causation in connection with the divorce, the infidelity, and the remarriage. Instead, they tried to smuggle it into a mid-trial offer of proof. Worse, after telling the judge specifically they would not do that, at volume 9 of the trial at page 117, they told the district judge, we're going to put an offer of proof just so we don't have to call a witness, which of course perfectly tracks Federal Rule of Evidence 103, which says an offer of proof is the substance of the evidence, just the facts. That's not what they did. When the offer of proof came in, it included all these new issues that had not been raised before, were not raised in limine, and then they tried to set the district court up on a motion for a new trial to toss out the whole seven, eight-day trial that was tried under the ground rules established on the motion in limine. This court's cases say you can't have an abusive discretion where an issue was not clearly presented to the court below, and you can't have an abusive discretion over issues of basic trial management. Delving a little bit deeper into the damages question, the district court did not abuse its discretion by focusing the jury on the genuine disputed issues, not decades-old family scandal, that predated Mr. Sauer's illness and death by more than 20 years. The evidence had no relevance to Mrs. Sauer's compensatory damages. In this wrongful death case tried under Florida law, the measure of wrongful death damages begins at the time of injury going forward to the end of the decedent's but-for life expectancy, about 12 to 13 years on the record below. So that does not open the door, as the district court recognized, of putting the plaintiff's entire personal life over their entire adult life on trial. If you look at the Foxworth case from 1899, Florida law 1899, what is relevant is the state of the marriage at and prior to the death, not all time. If you look at the Adkins case, which they rely on, Florida Intermediate Court, 1977, where the decedent was living with his paramour six months before he died, where he told his paramour he was going to leave his wife, where the court described it as a marriage at or past its breaking point. Nothing like that here. Did you or trial counterpart or your client tell the jury in opening statement they'd been married for 50-some-odd years? We did not. What counsel said was that they'd been married 41, 51 years. It was a stumbling of words. I don't think it told the jury anything. Immediately after that misstatement, counsel reminded the jury that the proper measure of damages was from the time of injury on forward and sympathy was not to be taken into account. So I think reading that much into it, even if it were a one possible view, I don't think it was, it certainly was not the only view. It sounds like the most reasonable view of his statement was they'd been married continuously for a half century. I don't think it was an abuse of discretion to view it otherwise, but I also think even if he had said that, it still doesn't make it relevant. What's relevant is from the time of injury on forward. Look at Adkins. What Adkins says first— There's the line of thought that it's difficult for a lawyer or a side to state or argue something at trial and then get up and defend against an objection to it by saying it wasn't relevant anyway. It wasn't relevant. Your counterpart shouldn't have said it. That may be true, Your Honor, but that doesn't change the fact that what the jury was instructed to decide was based on from the time of injury on forward. I mean, even if you just look at Adkins, what Adkins says first is that that evidence is relevant to show expressed intent and probable future actions. It's about whether their marriage is even going to stay together during the hypothetical world where the decedent did not pass away. That's in Acock, too. Acock says it's relevant to whether the decedent will be able to care for his family in the future. So it's extremely attenuated. On prejudice, the district court did not abuse its discretion by determining that this evidence had a tendency to invite the jury to decide the case based on moral condemnation, personal bias rather than reason. Again, just look at the record underlying the district court's decision. Their argument that it was prejudice to Mr. Sowers and not Mrs. Sowers cuts it quite thin. It's not even true as a formal matter. Mr. Sowers, in a wrongful death case in Florida, was a party. His estate is the party to the case, not Mrs. Sowers. She's the personal representative. But the jury knew that this case arose out of his illness and his death, and so any inappropriate emotional reaction to him, it's quite reasonable to infer that it would have been carried over to her. This case is not Acock. I think the most important thing to recognize about Acock is that Acock involved legal error, which is per se abusive discretion. In Acock, R.J. Reynolds wanted to introduce evidence of the decedent's alcoholism as an alternative medical causation. They had experts ready to testify that alcohol may have contributed to his disease. The district court excluded that evidence because R.J. Reynolds could not prove that theory to some level of medical certainty. That was legal error twofold. First, because the standard is preponderance, not medical certainty. But second, because the defendant carries no burden on causation. The burden was on the plaintiff, and so the district court engaged in burden shifting. I think if you give Acock a careful read, there's no indication it would have been an abusive discretion but for those two legal errors. But even focusing just on the small portion of Acock that talks about relevance to damages, we see two crucial distinctions between that case and this case. First, contrary to what my friend argued, the evidence there was close in time. The district court in this case was aware of Acock, carefully read Acock, and looked at the briefs underlying Acock to see what the facts were there. And he found evidence of alcoholism and alcohol affecting the marriage very close in time to the death, after the decedent became a grandfather. But second, the spouse in Acock testified on the stand, contrary to the excluded evidence, that alcohol had never affected her marriage. There's nothing like that here. Finally, on the addiction and causation question, as mentioned before, it was never properly presented to the district court, and so it can't be the basis for an abusive discretion. But a couple other things bear mentioning. First, alcohol evidence came in this case in spades. The jury heard from three witnesses that he was a heavy drinker, that he stayed up all night drinking, stopped at the bar on his way to work, drank at work, two six-packs a night, required prescription medication to quit drinking. In the words of an addiction expert, quote, had no control over that behavior. Even Acock says that evidence that's merely bolstering evidence can be more readily excluded under Rule 403. And even accepting everything they say about addiction and causation, their ask of the district court and their ask on appeal is wildly disproportionate to that theory. There's, for example, no reason why evidence of the infidelity would be relevant to alcohol or addiction and causation. Nothing in the record connects drinking to infidelity. And if you look at their offer of proof they submitted, the level of detail with which they asked the court to let them go into these questions is so out of bounds compared to this narrow legal theory. They wanted to ask Mrs. Sowers the names of the women that he cheated with, that he married. I mean, none of this is relevant to addiction, so there's no abuse of discretion in disregarding that argument. Briefly on the closing argument question, reversal of a jury verdict over improper closing argument is an extreme remedy for extreme misconduct. There's multiple presumptions against it. High standard, plainly unwarranted, clearly injurious. The few cases rejecting jury verdicts on this basis tend to involve pervasive, persistent misconduct, calling out the defense attorneys by name, talking about who was manipulating the verdict forms and the jury instructions in other cases, along with other misconduct. You can look at Callaway, the Callaway case, 14 sustained objections and 33 pages of transcript. They cite the laundry list of cases to you, every case that's ever rejected a jury verdict on this basis, but there's no case that even resembles this one. If anything, the closest case to this is this court's decision in code just last year in 2018 where Philip Morris in that case appealed arguing that counsel's reference to rewriting history was the same type of misconduct that you see here. And the court correctly, I think, held that that was just a general remark on the defense strategy and there's no way you could find prejudice from such a passing remark. Thank you. Counsel, I was just curious. I always do a timeline or acknowledge any cases. I ask you, is the wife 94 years old? I believe she's 93. 93, okay. Just curious. Thank you. Thank you. Mr. Burnett, three minutes. Thank you, Your Honor. The assertions that a raft of cases have rejected this argument, those cases involve the findings, the Engel findings, and other individualized issues such as inserci. Here, we're talking about all individualized issues. We're not talking about the findings. We're talking about punitive entitlement, comparative fault, class membership, compensatory damages, issues that the Florida Supreme Court said as a matter of state law are all individualized issues. The cases they've cited under the gasoline product standard generally, those are all fly-by rulings. All but one of them are simply statements in the remand saying, we remand for a new trial on punitive damages only. There's no analysis, not even a citation of gasoline products. The exception to that, the lone exception, is the Atlas Foods case from the Fourth Circuit. It cites gasoline products, notes the standard, and it says there's no need to retry all the issues because all the evidence for punitive damages was before the second jury. That's not the test. The test is whether it clearly appears the issues are so distinct and separable. So that's not even persuasively helpful on the actual application of the standard. On Cooper, you had the issue right, Chief Judge Carnes. Under Florida law, it is a fact question for the jury as to whether punitive entitlement, whether the plaintiff is entitled to punitive damages, that's actually in a separate phase, the first phase of trial. And then the jury comes back to a second phase of trial where they answer the question about the amount of punitive damages. And Cooper does hold that the amount of punitive damages is not a question of fact. It's subject to de novo review. Look at Note 12 of the Cooper case. It notes that the jury in that case made specific factual findings. And the Supreme Court said nothing in our decision would allow a reviewing court to disregard these factual determinations made by the jury. And then it's really a matter of state law. And SOFR, the case they're relying on, says explicitly the trier of fact must decide on remand these factual questions, whether the defendant had actual knowledge of the wrongfulness of its conduct, actual knowledge there was a higher probability of likelihood of injury, intentionally pursued that conduct. These are questions for the trier of fact, and they are self-evidently factual questions. And the weighing of the five factors. There's no instruction, I gather, that you're entitled to that all factors have to exist, obviously. Actually, for that test, the jury has to find all four of those factors before it can then go on to the punitive amount phase. It has to find they're all cumulative. But they're all questions of fact, and that's the point. And they're all questions of fact that relate to Reynolds' conduct. Does the first jury have to have found all of those factors for comp damages? For compensatory damages, no, Your Honor. But I get the compensatory damages through comparative fault based on the four-line case. I'm not making an argument that punitive damages and compensatory damages are intertwined. They can be under the view that compensatory damages for non-economic damages contain a punitive element, and some of the cases that we have cited do hold that, such as the EEOC versus Dock's case. But Florida law, under the four-line decision, makes the connection between comparative fault and compensatory damages. So here's the chain of reasoning. Punitive entitlement linked to comparative fault. Comparative fault linked to class membership. Comparative fault linked to compensatory damages. And that's why all of those issues need to be retried together. Okay, thank you. Thank you, Your Honor. Thank you, counsel. That was well-argued on both sides. And the record will show that's the only time I've said that this week. Thank you, Your Honor. Bessie Morris versus Kennedy. Thank you.